**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-996-DOC (JPRx) Date: December 23, 2013

Title: NETLIST, INC. V. SMART MODULAR, INC. ET AL.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Dwayne Roberts | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS): ORDER TRANSFERRING REMAINING CLAIMS**

Before the Court are the claims remaining in this case after the Court ordered claims one through five transferred to the Northern District and claims six, seven, thirteen (as to SMART Modular and SMART Worldwide), and fourteen to the Eastern District. *See* Order, November 26, 2013 (Dkt. 105). The Court also issued an order to show cause why the remaining claims, eight through thirteen (as to Diablo), should not also be transferred to the Northern District. Despite the parties' request, the Court finds this issue appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving papers, the Court TRANSFERS the remaining claims to the Northern District of California under 28 U.S.C. § 1404.

## I. Factual Background

The facts are known to the parties and discussed in the Court's prior order. The Court repeats only those facts most relevant to the remaining claims.

---

Plaintiff Netlist, Inc. ("Netlist") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Irvine, California. Complaint ("Compl.") (Dkt. 1) ¶ 2. Netlist designs products providing high-performance memory for servers and storage systems. *Id*. The First Amended Complaint ("FAC") (Dkt. 5) alleges several general harms wrought by defendants Diablo, SMART Modular, SMART Worldwide, and SMART Storage Systems, Inc. ("SMART Storage"). Diablo is the only remaining Defendant at this time.

a. Theft of Netlist's Technology and Trade Secrets

Netlist claims that Diablo is one actor in a "pattern of unlawful and deceptive conduct" designed to harm Netlist and support SMART Modular's new product, ULLtraDIMM. This process allegedly began in 2008, when Netlist signed a nondisclosure agreement ("NDA") with Diablo to investigate working together. *Id*. ¶ 10(a). Netlist claims it shared highly confidential information about its new product, HyperCloud, with Diablo. *Id*. Later that year, Netlist and Diablo signed an agreement by which Diablo would design and supply chipsets for Netlist. *Id*. ¶ 10(b).

Netlist claims Diablo then filed patent applications with the United States Patent and Trademark Office ("USPTO") that included Netlist's confidential information, failed to include on the applications Netlist's engineers as inventors, and failed to notify Netlist beforehand. *Id*. ¶¶ 10(c)-(d). Then, in 2012, Diablo began offering on its website a chipset using Netlist's technology. *Id*. ¶ 10(e). Diablo's website referred to the HyperCloud trademark to promote this chipset. *Id*. In 2013, Diablo entered into an "exclusive relationship" with SMART Storage. *Id*. ¶ 10(f). In August 2013, the two announced ULLtraDIMM, which allegedly uses the trade secrets Diablo stole from Netlist. *Id*.

b. Infringement of Netlist's Patents

The FAC also alleges that the ULLtraDIMM product infringes on five Netlist patents: (1) United States Patent No. 8,001,434 (the "'434 Patent"); (2) United States Patent No. 8,301,833 (the "'833 patent"); (3) United States Patent No. 8,359,501 (the "'501 patent"); (4) United States Patent No. 8,516,185 (the "'185 patent"); and (5) United States Patent No. 8,516,187 ("the '187 patent"). *Id*. ¶¶ 12-19. The Court transferred these claims to the Northern District in its November 26, 2013 Order.

## II. Procedural Background

a. Central District Litigation

On July 1, 2013, Netlist filed the first Complaint in this action. *See* Compl. (Dkt. 1). The Complaint named only SMART Modular as a defendant. Netlist never served this initial complaint. This first complaint alleged claims for attempted monopolization, *Walker Process* violations, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and fraud. *Id.* These claims did not allege any infringement of any of Netlist's patents.

SMART Modular announced its ULLtraDIMM product on August 8, 2013. Netlist amended its Complaint in this district on August 23, 2013. The claims currently before the Court address contract, trademark, unfair competition, and trade secret disputes between Netlist and Diablo.

b. The Northern District Litigation

On August 22, 2013, Netlist contacted all four defendants in this case to inform them that Netlist intended to file an amended complaint alleging infringement of the five Netlist patents the next day. *See* Motion to Dismiss, Case no. 13-3901 (Dkt. 13), Ex. C. On August 23, 2013, Diablo filed a declaratory judgment complaint in the Northern District seeking declaratory judgment of non-infringement and invalidity of the Five Netlist Patents. *See* Complaint, Case no. 13- 3901 (Dkt. 1). About two hours later, Netlist filed the FAC in this case, with the claims discussed above. Shortly thereafter, SMART Modular also filed a declaratory judgment action in the Northern District requesting a determination of invalidity and non-infringement of the Five Netlist Patents.

Netlist made an unsuccessful motion to transfer. *See* Notice of Orders in Parallel Proceedings (Dkt. 77), Ex. B. This Court then granted Defendants' motion to transfer claims one through five of the FAC to the Northern District and issued the instant Order to Show Cause why the remainder of the claims in the FAC should not also be transferred to the Northern District.

## III. Legal Standard

Under 28 U.S.C. § 1404(a), a district court may transfer a case to another district "where it might have been brought" for "the convenience of the parties and witnesses" and "in the interest of justice." In determining whether to grant a transfer, the court must consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) whether transfer will serve the interests of justice. *Id*. Usually, a plaintiff's choice of venue will not be disturbed unless the party seeking transfer presents strong grounds for transferring the action. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1986). Determining whether to transfer a case requires "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000) (citation omitted). The moving party bears the burden. *See id*. at 499.

Courts consider a variety of factors in determining the convenience of the parties and witnesses, including: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

However, "[t]he interests of justice factor is the most important factor for the court to consider. Indeed, 'fairness considerations may be decisive in ruling on a transfer motion, even when convenience of witnesses and parties points the other way.'" *Vehimax Int'l, LLC v. Jui Li Enter. Co.*, 2010 U.S. Dist. LEXIS 42801, at *14 (C.D. Cal. Mar. 16, 2010) (quoting *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991)). The interests of justice include the interests of judicial economy and avoiding duplicate litigation. *Crawford v. Bell,* 599 F.2d 890, 893 (9th Cir. 1979). The Court must ask whether transfer will prevent the "mischievous consequences against 'the interest of justice' that [§] 1404(a) was designed to prevent, that is, unnecessary inconvenience and expense to parties, witnesses, and the public." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 21 (1960).

## IV. Discussion

There is no dispute that the instant claims could have been brought in the Northern District. The only issue for the Court, then, is whether the convenience of the parties and witnesses and the interests of justice weigh in favor of transfer.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**



The convenience of the parties weighs in Netlist's favor. First, Netlist's choosing the Central District is accorded significant weight in this analysis. *See Decker Coal*, 805 F. 2d at 843. Netlist is based in the Central District. *See* Cunningham Decl., Ex. A. Diablo is a Canadian company, but has five employees in the Northern District. McMullen Decl., Case no. 13-3901 (Dkt. 17), ¶ 3. Although it would be slightly more convenient to Diablo to litigate in the Northern District, it would be far more convenient to Netlist to litigate in the Central District near its headquarters and primary facilities.

The convenience of the witnesses is somewhat less clear. Certainly it would be more convenient for all witnesses from Netlist's offices to litigate in this district. It may be somewhat more convenient for Diablo's witnesses to litigate in the Northern District, but many witnesses will likely be flying from Canada, and the difference between the Northern and Central Districts would be minimal. It would be very inconvenient and costly for the witnesses to have to duplicate testimony in both locations, but the testimony on the infringement claims will not be entirely duplicative of the claims before this Court. However, it seems likely that there will be some overlap. On balance, the Court finds this factor either neutral or weighing slightly in favor of Netlist.

An advantage to transfer to the Northern District, however, would be the feasibility of consolidation with the five patent claims. This would streamline the litigation and aid judicial efficiency. Netlist disagrees and argues that transferring the claims would result in Diablo "gaming the system" by sending Netlist's patents for reconsideration and requesting to stay the whole case. The Court is puzzled by this argument, given that Netlist brought all of these claims together in the first place. The Court also has every confidence that the Northern District is fully able to decide the merit of any requests for reconsideration or stay. It is unclear why Netlist believes this Court would handle the issue differently. The opportunity for consolidation weighs strongly in favor of transfer.

All other factors are neutral. The ease of access to the evidence and the familiarity of the respective forums with the law do not differ between the districts and do not appear especially relevant in this case. Both forums are equally able to apply the law, and there are no significant evidentiary issues favoring one forum over the other. There is no local interest in the controversy that supports either position, and so this factor is neutral. The relative court congestion in the Northern and Central districts is not sufficiently different to strongly support either location, and so this factor is also neutral.

---

Considering all of these factors together, the convenience of the parties and witnesses likely favors the Central District, although not insurmountably. The interests of justice weigh heavily in favor of transfer, and such considerations may certainly outweigh even strong interests on the parties' part. *See Vehimax Int'l*, 2010 U.S. Dist. LEXIS 42801, at *14. The court finds that to be the case here.

The claims remaining in this lawsuit all accuse Diablo of wrongful conduct surrounding Netlist's business relationship with Diablo. Netlist claims, in short, that Diablo stole trade secrets from Netlist, breached their agreements, used Netlist's name to sell its products, and then handed its stolen information to SMART Modular to build an allegedly infringing product. Although the individual claims of the patents being litigated in the Northern District may not depend on the trade secret, trademark, or contract claims at issue here, the overall facts of the two suits are heavily interrelated. The claims here all rely on the argument that Diablo used and is using proprietary technology in their products. This will require examining the development and functioning of the ULLtraDIMM product, which is also the alleged infringing product in the patent claims. This process will require at least some duplicative analysis.

Litigating these cases separately is certainly a waste of public resources in the form of court time and effort. At least some of the factual issues will coincide, and create a risk of inconsistent factual findings or judgments. This will also require at least some duplicative testimony in both districts, and require both courts to review the same narrative. Although it is certainly prejudicial to Netlist, there is no question that the interests of justice and the public generally require hearing as many claims as possible in the same Court. *See Cont'l Grain Co.*, 364 U.S. at 21. The interests of justice thus outweigh the convenience of the parties and require transfer.

The Court thus TRANSFERS claims eight through thirteen to the Northern District of California pursuant to 28 U.S.C. § 1404. All remaining motions on the docket in this Court are DENIED WITHOUT PREJUDICE, to be refiled in the appropriate venue.

The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-996 (JPRx) Date: December 23, 2013


---

CIVIL-GEN Initials of Deputy
Clerk